UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, *Plaintiff*, | § § |
| v. | § §     EP-25-MJ-02297-MAT |
| **BERNARDO SANCHEZ-SALINAS**, *Defendant*. | § § § |

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

On July 24, 2025, the Court held a jury trial on Count II, a violation of 50 U.S.C. § 797, as stated in the Misdemeanor Information filed on May 19, 2025, ECF No. 7, in the above-captioned case. On July 25, 2025, the Court held a bench trial on Count I and Count III, charging violations of 8 U.S.C. § 1325(a)(1) and 18 U.S.C. § 1382, respectively. Defendant Bernardo Sanchez-Salinas ("Defendant") was present and represented by counsel. Neither Count I nor Count III qualified for a jury trial as petty offenses.

At the close of the Government's case in the jury trial on Count II, the Court granted Defendant's Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29. The Court immediately proceeded to a bench trial on the remaining petty offenses. After hearing evidence on Count I and Count III, the Court has determined that Defendant is **GUILTY** beyond a reasonable doubt of violating 8 U.S.C. § 1325(a)(l) and **NOT GUILTY** of violating 18 U.S.C. § 1382. In accordance with Federal Rule of Criminal Procedure 23(c), the Court enters these Findings of Fact and Conclusions of Law with respect to Count I and Count III.

### PROCEDURAL BACKGROUND

On May 19, 2025, formal charges were filed against Defendant in the form of a Criminal Misdemeanor Information. *See* Misdemeanor Information, ECF No. 7. Defendant was charged

with three counts and was accused of: Count I, violating 8 U.S.C. § 1325(a)(l), Improper entry by alien; Count II, violating 50 U.S.C. § 797, Penalty for violation of security regulations and orders; and Count III, violating 18 U.S.C. § 1382, Entering military, naval, or Coast Guard property. *Id.* 1–2.

Count I of the Misdemeanor Information, accused Defendant on or about May 8, 2025, of being an alien to the United States and "knowingly and unlawfully enter[ing] and attempt[ing] to enter the United States, at a time and place[1] other than designated by immigration officials of the United States for the entrance of immigrants into the United States …." *Id.* 1.

Count III of the Misdemeanor Information, the violation of 18 U.S.C. § 1382, accused Defendant on or about May 8, 2025, of:

> enter[ing] any military reservation, post, fort, arsenal, station, and installation, specifically, the National Defense Area created by lawful authority on April 30, 2025, by the Senior Commander, U.S. Army Ft. Bliss, establishing a National Defense Area, and declaring the lands to be a Restricted Area of the Department of the Army comprising approximately 2,000 acres of land located along the southern border of the United States, and said entry was for any purpose prohibited by law or lawful regulation, specifically, Title 8 U.S.C. Section 1325(a)(l) ….

*Id.*

### FINDINGS OF FACT

At the conclusion of the jury trial on Count II, the Court immediately proceeded to a bench trial on the two remaining petty offenses. The Court took judicial notice of the testimony from the trial on Count II. Neither party offered any additional testimony on the evidence. Based upon witness testimony and arguments from both parties, the Court makes the following findings of fact as to Count I, violating 8 U.S.C. § 1325(a)(l):

---

[1] The Court notes that the Government misquotes 8 U.S.C. § 1325(a)(1), which specifies that an individual violates the statute when he or she "enters or attempts to enter the United States at any time *or* place other than as designated by immigration officers." 8 U.S.C. § 1325(a)(1) (emphasis added).

2

1)   On or about May 8, 2025, Defendant, an alien to the United States, and a citizen and native of the Republic of Mexico, entered the United States from the Republic of Mexico approximately .47 miles west of the Paso Del Norte Port of Entry, in El Paso, Texas, in the Western District of Texas.

2)   Defendant did so by crossing the Rio Grande River, the international boundary between the United States and the Republic of Mexico.

3)   The place where Defendant entered the United States is not designated as a port of entry.

Next, based upon witness testimony and arguments from both parties, the Court makes the following findings of fact as to Count III, violating 18 U.S.C. § 1382:

1)   On or about May 8, 2025, Defendant entered the Texas National Defense Area ("NDA"), which is a military reservation and a restricted area under the administrative control of the U.S. Department of the Army.

2)   Defendant entered the NDA approximately .47 miles west of the Paso Del Norte Port of Entry in El Paso, Texas, in the Western District of Texas.

3)   The testimony from U.S. Border Patrol Agent James A. Diaz ("Agent Diaz"), who was working camera control, indicated that on May 8, 2025, at about 10:40 am, he alerted agents on the ground to surveilled motion around the border. An audio file, Government's Exhibit 1a, of Agent Diaz's alert was played. The audio stated that three subjects, Pl.'s Ex. 1a 01:15–01:22, were seen in the area between Chihuahuita Park and the Robertson-Umbenhauer Water Treatment Plant ("Water Treatment Plant"), *id.* 00:09–00:12, 01:08–01:24, 03:25–03:33, and were heading towards the docks at the BNSF Railway-El Paso Yard ("Railway Yard"), *id.* 01:19–01:24, 03:33–03:38. In the audio file, it was stated that

U.S. Border Patrol Agent Jacob Fowler ("Agent Fowler") was in the area to apprehend the suspects. *Id.* 06:05–06:28.

4) Testimony from Agent Fowler indicated that he apprehended Defendant at the Railway Yard docks on May 8, 2025. Agent Fowler also testified that he believed the National Guard was present in the area where Defendant initially crossed into the United States, but no other evidence corroborated the presence of the National Guard.

5) At a U.S. Border Patrol Station, U.S. Border Patrol Agent Jorge Muñoz ("Agent Muñoz") questioned Defendant about his contact with alien smugglers. During this questioning, Defendant admitted to Agent Muñoz that he knew he had entered the United States illegally.

6) Agent Muñoz also testified that he had Defendant read aloud his own *Miranda* rights before Defendant waived them. Agent Muñoz provided Defendant with a document with his *Miranda* rights written in Spanish. Agent Muñoz testified that Defendant attempted to read his *Miranda* rights aloud, but that he had to help Defendant read the document in Spanish. Agent Muñoz testified he was unsure of Defendant's education level.

7) U.S. Border Patrol Agent Fabiola Cintron ("Agent Cintron") testified that she was the case agent for this case. As case agent, she testified that it was her responsibility to gather all the evidence of this case to provide the jury with a snapshot of what happened on May 8, 2025. From the evidence she received, she testified there was no indication that any of the agents saw the National Defense Area signs ("NDA signs") in the area where Defendant crossed and was apprehended on May 8, 2025. She also testified there was no indication that Defendant saw military presence in the area where Defendant crossed and was apprehended on May 8, 2025. She testified that nothing was documented in the

prosecutorial file regarding whether Defendant was asked, answered, or stated that he was aware of the NDA. She testified there was nothing in the prosecutorial file showing that Defendant knew he was entering into an NDA.

8) Agent Cintron testified that although she believed the NDA signs were posted on April 30, 2025, and May 1, 2025, she did not actually observe the signs until weeks later in June 2025 or July 2025. Agent Cintron also testified that the NDA signs she observed in the area were at least one hundred feet apart, and that some signs were hundreds of yards apart from each other.

9) Government's Exhibit 3a was a photograph of an NDA sign directly in front of the Water Treatment Plant. *See* Pl.'s Ex. 3a. This was the only photographed NDA sign that was put into evidence, although there were multiple photographs of this individual sign. *See* Pl.'s Ex. 3e, Pl.'s Ex. 3f, Pl.'s Ex. 3g.

10) Agent Cintron testified that the photos of this NDA sign in Government's Exhibit 3a were not taken until June 2025 or July 2025, several weeks after Defendant was apprehended on May 8, 2025. Neither were any agents able to testify as to whether, on May 8, 2025, they personally saw this NDA sign. In addition, it was never ascertained that Defendant, on May 8, 2025, read this sign or any other NDA sign, saw this sign or any other NDA sign, crossed by this sign or any other NDA sign, or knew of this sign or any other NDA sign.

11) Agent Fowler testified that given the path of Defendant's entry, it was very likely he crossed by the NDA sign photographed in Government's Exhibit 3a; however, none of the agents, including Agent Fowler, were able to testify as to whether, on May 8, 2025, they actually saw Defendant cross, pass by, or see this NDA sign or any other NDA sign.

**CONCLUSIONS OF LAW**

The Misdemeanor Information charges Defendant with: Count I, violating 8 U.S.C. § 1325(a)(l), which makes it a crime to cross or attempt to cross the border into the United States at any time or place other than as designated by immigration officers, and Count III, violating 18 U.S.C. § 1382, which makes it a crime to enter the National Defense Area which is comprised of approximately 2,000 acres of land along the southern border of the United States if such entry was for any unlawful purpose.

For the Court to find Defendant guilty of Count I, violating 8 U.S.C. § 1325(a)(l), the Government must prove beyond a reasonable doubt:

1) That Defendant is an alien to the United States; and

2) That on or about May 8, 2025, in the Western District of Texas, Defendant entered the United States at any time or place other than as designated by immigration officers.

3) The Court finds that the Government proved each of the above elements beyond a reasonable doubt. As such, the Court finds Defendant guilty as to Count I, violating 8 U.S.C. § 1325(a)(l).

For the Court to find Defendant guilty of Count III, violating 18 U.S.C. § 1382, the Government must prove beyond a reasonable doubt:

1) That on or about May 8, 2025, in the Western District of Texas, Defendant entered the Texas NDA, which is a military reservation and a restricted area under the administrative control of the U.S. Department of the Army;

2)      That Defendant knew[2] he was entering a military reservation; and

3)      That Defendant entered the military reservation for the prohibited purpose of entering the United States at any time or place other than as designated by immigration officers, in violation of 8 U.S.C. § 1325(a)(1).

4)      The Court finds that the Government did not prove each of the above elements beyond a reasonable doubt. Specifically, the Court finds that the Government did not prove beyond a reasonable doubt that Defendant knew he was entering a military reservation. As such, the Court finds Defendant not guilty as to Count III, violating 18 U.S.C. § 1382.

---

[2] The Court notes that although 18 U.S.C. § 1382 does not have an explicit *mens rea*, Courts have read a "knowingly" *mens rea* requirement into the statute. Accordingly, 18 U.S.C. § 1382 is not a strict liability statute. *See United States v. Hall*, 742 F.2d 1153, 1154 (9th Cir. 1984) (holding that "going upon a military base *with knowledge* that such entry is unauthorized violates the statute") (emphasis added); *United States v. Lopez-Gonzalez*, No. 25-MJ-1562 GBW, 2025 WL 1404848, at *6 (D.N.M. May 14, 2025) (noting that "Congress intended only to criminalize the 'going upon' in 18 U.S.C. § 1382 if it was done knowingly"); *United States v. Cottier*, 759 F.2d 760, 762 (9th Cir. 1985) (finding that the "purpose prohibited by law" requirement of 1382 is satisfied "if the defendant *knows* that his entry is unauthorized").

The longstanding jurisprudence regarding *mens rea* in statutes where it is not specifically mentioned is to presume a scienter requirement. *See Rehaif v. United States*, 588 U.S. 225, 229 (2019) ("We apply the presumption of scienter even when Congress does not specify any scienter in the statutory text."); *Staples v. United States*, 511 U.S. 600, 605 (1994) ("'[T]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence.'") (quoting *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 436 (1978))); *Morissette v. United States*, 342 U.S. 246, 250 (1952) ("The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil."). The reason for this presumption in favor of a scienter element is to avoid ensnaring innocent actors with criminal liability. *See Staples*, 511 U.S. at 610 (describing the Supreme Court's "particular care … to avoid construing a statute to dispense with *mens rea* where doing so would 'criminalize a broad range of apparently innocent conduct'") (quoting *Liparota v. United States*, 471 U.S. 419, 426 (1985))); *Rehaif*, 588 U.S. at 231 (explaining that the purpose of a scienter requirement is to "'separate those who understand the wrongful nature of their act from those who do not'") (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 n.3 (1994))).

## CONCLUSION

The Court hereby **FINDS** Defendant Bernardo Sanchez-Salinas **GUILTY** beyond a reasonable doubt of Count I, violating 8 U.S.C. § 1325(a)(l) and **NOT GUILTY** of Count III, violating 18 U.S.C. § 1382, as charged in the Misdemeanor Information in this cause.

Accordingly, the Court **ORDERS** that Defendant is sentenced to the custody of the U.S. Bureau of Prisons to serve a sentence of **TIME SERVED** as to Count I of the Misdemeanor Information.

**SIGNED** and **ENTERED** this <u>4th</u> day of August 2025.

_____
**MIGUEL A. TORRES**
**UNITED STATES MAGISTRATE JUDGE**